http://www.va.gov/vetapp16/Files4/1634323.txt

Citation Nr: 1634323 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-43 167 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Anchorage, Alaska

THE ISSUES

1. Entitlement to an initial disability rating in excess of 40 percent for rheumatoid arthritis (RA).

2. Entitlement to an initial disability rating in excess of 10 percent for Graves' disease (hyperthyroidism).

3. Entitlement to an initial disability rating in excess of 10 percent for celiac disease, to include as secondary to Graves' disease.

4. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

REPRESENTATION

Appellant represented by: Harold H. Hoffman-Logsdon, III, Attorney at Law

ATTORNEY FOR THE BOARD

C.S. De Leo, Associate Counsel

INTRODUCTION

The Veteran served on active duty from November 1980 to November 1983, January 2005 to August 2006, and March 2007 to March 2008. Among his awards and decorations is the Combat Action Badge. 

This matter comes on appeal before the Board of Veterans' Appeals (Board) from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Anchorage, Alaska, which granted service connection for RA of the hands and assigned a 40 percent disability rating, and also granted service connection for celiac disease and assigned a 10 percent disability rating. The effective date was July 15, 2009 (the date the claim was received). In that decision, the RO also granted service connection for Graves' disease and assigned a 10 percent disability rating effective March 20, 2008 (the date following the Veteran's discharge from active duty service).

A March 2011 rating decision the RO denied entitlement to a TDIU. In November 2011, the Veteran filed a notice of disagreement (NOD) with the determination. A statement of the case (SOC) was issued in August 2013 and the Veteran perfected a substantive appeal (via a VA Form 9, Appeal to Board of Veterans' Appeals) in September 2013, and therefore, the issue of TDIU is also on appeal before the Board.

A July 2014 rating decision, inter alia, granted service connection for radiculopathy of the lower right and left extremity, continued the 10 percent rating for lumbar spine disability, and also denied entitlement to service connection for a cervical spine disability. In June 2015, the Veteran filed a NOD with the determinations. A SOC was issued in September 2015. The Veteran has not filed a substantive appeal and these matters are not before the Board. See 38 C.F.R. § 20.200 (2015) (An appeal consists of a timely filed notice of disagreement in writing and after a statement of the case has been furnished, a timely filed substantive appeal.). 

This appeal was processed using the Virtual VA and the Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of the Veteran's case should take into consideration the existence of this electronic record.

FINDINGS OF FACT

1. RA of the hands is not characterized by weight loss and anemia productive of severe impairment of health or severely incapacitating exacerbations occurring 4 or more times a year or a lesser number over prolonged periods; or by constitutional manifestations, associated with active joint involvement, more than minimal limitation of motion of joints affected, and is not totally incapacitating.

2. Celiac disease is manifested by occasional, moderate episodes of bowel disturbance with abdominal distress.

3. Graves' disease is not manifested by tachycardia and increased pulse pressure or blood pressure; or sympathetic nervous, cardiovascular, or gastrointestinal symptoms.

4. Resolving all doubt in the Veteran's favor, his service-connected disabilities preclude him from securing and following a substantially gainful occupation consistent with his education and occupational background.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 40 percent for RA are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.40, 4.45, 4.71a, Diagnostic Code 5002 (2015).

2. The criteria for a rating in excess of 10 percent for celiac disease have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.20, 4.27, 4.114, Diagnostic Codes 7399-7319, (2015).

3. The criteria for a disability rating in excess of 10 percent for Graves' disease have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.119, Diagnostic Code 7900 (2015).

4. The criteria for the assignment of a total disability rating based on individual unemployability are met. 38 U.S.C.A. § 1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act

The Veterans Clams Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. 

As to the claim for a higher initial rating for RA, celiac disease, and Graves' disease, these claims arise from the Veteran's disagreement with ratings assigned in connection with the grant of service connection for these disabilities. Where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007).

In addition, VA fulfilled its duty to assist the Veteran in obtaining the identified and available evidence needed to substantiate the claim and affording the Veteran with multiple VA examinations, to include a September 2009 VA examination, March 2010 VA examination, a January 2011 general medical examination, A June 2013 TDIU VA examination, and an October 2013 VA examination (with a December 2013 addendum opinion). The discussion below reflects that these examinations were based on consideration of the Veteran's medical history and described his symptoms in sufficient detail to allow the Board to make a fully informed evaluation. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). The Board therefore finds that when considered together with the entire record, these examinations are adequate. There is no evidence that additional records have yet to be requested, or that additional examinations are in order. 

The Board will therefore proceed to the merits of the claim for higher initial ratings and for entitlement to a TDIU.

Increased Rating Claims

Disability evaluations are determined by application of the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate ratings may be assigned for separate periods of time based on the facts found. In other words, the ratings may be staged. Fenderson v. West, 12 Vet. App. 119 (1999). Here, however, as shown below, the evidence warrants a uniform 70 percent rating.

Rheumatoid Arthritis

The Veteran's RA is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5002. Under Code 5002, a 20 percent evaluation is warranted for active rheumatoid arthritis where there are one or two exacerbations a year in a well-established diagnosis. A 40 percent evaluation is warranted for active rheumatoid arthritis for symptom combinations productive of definite impairment of health objectively supported by examination findings or incapacitating exacerbations occurring three or more times a year. A 60 percent evaluation applies for active rheumatoid arthritis where the evidence demonstrates symptomatology less than the criteria for 100 percent, but with weight loss and anemia productive of severe impairment of health or severely incapacitating exacerbations occurring 4 or more times a year, or a lesser number over prolonged periods. Finally, a 100 percent evaluation is warranted for active rheumatoid arthritis for constitutional manifestations associated with active joint involvement, totally incapacitating. 38 C.F.R. § 4.71a, Diagnostic Code 5002.

Diagnostic Code 5002 further provides that chronic residuals, such as limitation of motion or ankylosis, are to be rated under the appropriate diagnostic codes for the specific joints involved. A note to Diagnostic Code 5002 states that ratings for an active process will not be combined with ratings for chronic residuals. Instead, the higher of the two evaluations should be assigned.

The Court has held that evaluation of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain under 38 C.F.R. § 4.40 (2015) and functional loss due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. § 4.45 (2015). See, in general, DeLuca v. Brown, 8 Vet. App. 202 (1995).

Although pain may cause a functional loss, pain itself does not constitute functional loss. Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011) (quoting 38 C.F.R. § 4.40).

RA is currently rated 40 percent disabling under the general rating formula, which contemplates active rheumatoid arthritis with symptom combinations productive of definite impairment of health objectively supported by examination findings or incapacitating exacerbations occurring three or more times a year.

During the pendency of the claim, the Veteran's symptoms do not meet the criteria for a rating in excess of 40 percent. During the time period on appeal, an October 2008 private treatment record from Dr. S.L.A of the Adonal Diabetes and Endocrinology Center indicates the Veteran was diagnosed with mild anemia. 

A July 2009 private treatment record from Dr. M.A. states that the Veteran is under his care for RA.

An August 2009 statement from Dr. A. of the Adonal Diabetes and Endocrinology Center indicates that the Veteran first presented with symptoms of breast tenderness, shakiness, and increased irritability. He was thereafter diagnosed with Graves' disease as the cause of these symptoms and the abnormal laboratory findings resolved with treatment with radioactive iodine. Dr. A. goes on to state that for several years the Veteran had persistent problems with weight loss and frequent loose stools. When symptoms did not resolve with correction of Graves' disease, an evaluation showed the Veteran had celiac disease. Thereafter, Dr. A. notes that the Veteran developed debilitating problems with arthritis in his hands, in which the clinician indicates his belief that the Veteran was diagnosed with rheumatoid arthritis, noting that rheumatoid arthritis and Graves' disease share an "autoimmune mechanism of disease."

In September 2009 the Veteran was afforded a VA examination and reported symptoms to include a history of bilateral thumb pain and pain of the left little and ring fingers with slight improvement since he quit his plumbing job in 2009 and also that he is treated with medication by a private endocrinologist, Dr. A. On examination, range of motion of the hands and fingers were normal. The examination of the hands revealed normal motion with no pain in all fingers except for the left little finger in which there was some painful motion. There was also decreased strength in the thumbs and left ring and little fingers. The examiner diagnosed recurring pain in both hands due to rheumatoid arthritis.

On the March 2010 VA joints examination, the Veteran complained of progressively worse pain in both hands. X-ray of the hands identified deformity of the fifth metacarpal from old healed trauma and deformity of the base of the first metacarpal from old healed trauma with little degenerative change of the first metacarpophalangeal joint on the right. There was also mild contracture of the distal phalanx of the middle finger on the right hand and minimal degenerative change of the third metacarpophalangeal joint also on the right. On the left hand, there was vague, well circumscribed, cystic area of the head of the first metacarpal, which was determined could be secondary to old trauma. The examiner found that the left little and ring fingers were within normal limits and opined that x-ray findings did not suggest rheumatoid arthritis of either hand. The examiner however diagnosed seronegative rheumatoid arthritis and opined that the Veteran is unable to work "because of severe inflammatory arthritis of the hands, knees, and feet."

Notably, on VA examination in March 2010 for celiac disease, the examination report notes other significant physical findings to include arthritis of hands and feet.

On the January 2011 VA general medical examination, the Veteran complained of arthritic symptoms that affect all joints in the body to include pain and stiffness in his hands, elbows, low back, and knees. He reported that he was not currently taking any medication to treat symptoms. In the past, however, he discontinued the use of enbrel because it caused nausea as well as methotrexate and hydroxychloroquine, which did not relieve symptoms. He also reported decreased strength and dexterity in both hands, and constant stiffness and soreness with mild use of the hands, to include the use of tools or during push-ups. He reported that he paced himself with light carpentry/wood working at 15 to 20 minutes because his hands hurt and ache. Examination of the hands revealed normal muscle strength and the Veteran was unable to perform a forceful grip due to pain in the MCPs and PIPs of both hands. The examiner noted there was impaired strength or dexterity with both hands due to subjective pain preventing full strength testing. The examiner opined that there was no motor wasting or other problems interfering with grip. Examination of the right hand revealed a middle DIP mallet finger associated with a tendon injury. The right thumb was noted to have a healed fracture and slight deformity but without significant or major impact on thumb use. There was no gap between the thumb and fingers on forced opposition and no gap between any finger and the proximal transverse crease of either hand. 

An October 2013 VA examination report (with December 2013 addendum opinion) notes a 2009 diagnosis of rheumatoid arthritis treated with medication to include enbrel, methotrexate, and leflunamide without relief. On examination the Veteran did not have any joint deformities or limitation of joint movement attributable to his arthritis condition. There were no incapacitating episodes, anemia or weight loss. The examination report notes October 2013 x-rays of the hands and current lab studies do not support a diagnosis of rheumatoid arthritis but instead degenerative changes to his right finger.

The Board finds that the most probative evidence of record does not more closely approximate a rating in excess of 40 percent for RA during the appeal period. 38 C.F.R. § 4.7 (2015). The Board must apply the portion of Diagnostic Code 5002 that best describes the Veteran's overall symptoms. 38 C.F.R. § 4.20 (2015). The record shows that the Veteran is able to move his fingers and hands. Therefore, by definition, he does not have ankylosis. See Dinsay v. Brown, 9 Vet. App. 79, 81 (1996); Lewis v. Derwinski, 3 Vet. App. 259 (1992) (indicating that ankylosis is complete immobility of the joint in a fixed position, either favorable or unfavorable).

It is clear from the Veteran's description of his symptoms that there is limited motion and painful motion with use of his hands. In essence, all motion is accompanied by pain. The provisions of 38 C.F.R. § 4.59 establish that the Veteran is entitled to at least the minimum compensable evaluation for motion that is accompanied by pain. See also Burton v. Shinseki, 25 Vet. App. 1 (2011). However, the Veteran already is assigned in excess of the minimum compensable evaluation for painful motion. The most recent VA examination doubted whether joint pain was due RA, but even if it was, the minimal limitation of function exhibited would not result in a higher disability evaluation. The Veteran is already in receipt of compensable evaluations for limitation of motion of the spine and knees and the exhibited limitation of function elsewhere is minimal. 

Reviewing the evidence, the Board finds that the overall disability picture for the RA suggests that the Veteran's symptoms to include pain when using tools and during push-ups, stiffness, and decreased grip strength with multiple exacerbations a year in a well-established diagnosis. Here, the evidence does not show that the Veteran has produced incapacitating exacerbations four or more times per year. Further, the record does not show that his combination of symptoms produces "definite impairment of health" objectively supported by examination. The record and his statements show that during a flare-up he experiences pain, aches, and stiffness of the hands. The record does not show and no health care provider has stated that during a flare-up there is definite impairment of health or that his rheumatoid arthritis of the hands impacts his overall health in any way. Therefore, the preponderance of the evidence is against this claim and the provisions of 38 U. S. C. A. 5107(b) regarding reasonable doubt are not applicable. 38 C.F.R. § 4.3 (2015). 

Grave's Disease 

The Veteran's Graves' disease is rated 10 percent under 38 C.F.R. § 4.119, Diagnostic Code 7900. Under Diagnostic Code 7900, hyperthyroidism with tachycardia, which may be intermittent, and tremor, or; continuous medication required for control, is rated 10 percent disabling. Hyperthyroidism with tachycardia, tremor, and increased pulse pressure or blood pressure is rated 30 percent disabling. A 60 percent rating is appropriate where there is hyperthyroidism with emotional instability, tachycardia, fatigability, and increased pulse pressure or blood pressure. Where there is thyroid enlargement, tachycardia (more than 100 beats per minute), eye involvement, muscular weakness, loss of weight, and sympathetic nervous system, cardiovascular, or gastrointestinal symptoms, the disability is rated 100 percent disabling. 38 C.F.R. § 4.119. The same criteria apply for 30 and 60 percent ratings, respectively, under DC 7901 for toxic adenoma of the thyroid gland. Id. As such, DC 7901 will not be discussed separately in this analysis, as the same reasoning is applicable to any application of those criteria. The Board notes that it has considered whether DC 7902 could also apply, but the record lacks evidence of nontoxic adenoma with disfigurement of the head or neck. Id.

Note (2) to DC 7900 provides that, if ophthalmopathy is the sole finding, rate as impairment of field vision (DC 6080); diplopia (DC 6090); or impairment of central visual acuity (DCs 6061-6079). 38 C.F.R. § 4.119. DC 6080 provides disability ratings based on defects in the visual field of one or both eyes. See 38 C.F.R. 
§ 4.79. DC 6090 provides for disability ratings for double vision. See id. Finally, DCs 6061 to 6079 rate disabilities in impairment of visual acuity with correction. See 38 C.F.R. §§ 4.75, 4.76, 6.79.

The symptoms of hypothyroidism that remain following the RAI treatment may be properly considered under DC 7903 for hypothyroid disabilities. DC 7903 provides a 10 percent rating for fatigue or continuous medication required for control of hypothyroidism and a 30 percent rating for hypothyroidism manifested by fatigability, constipation and mental sluggishness. That code provides for a 60 percent rating when the disorder causes muscular weakness, mental disturbance, and weight gain, and a 100 percent rating when the disorder causes cold intolerance, muscular weakness, cardiovascular involvement, mental disturbance (dementia, slowing of thought, depression), bradycardia (less than 60 beats per minute), and sleepiness. 38 C.F.R. § 4.119, DC 7903.

During the pendency of the claim, the Veteran has had symptoms such as those listed in the criteria for a 10 percent rating to include tremors and treatment with medication to include synthroid. See October 2008 private treatment record from Adonal Diabetes and Endocrinology Center.

Post-service treatment records include a June 2008 private treatment record reflects that the Veteran reported having the "shakes" for the past month.
Private treatment records reflect the Veteran was diagnosed with Graves' disease in August 2008 by Dr. A. of the Adonal Diabetes and Endocrinology Center. The Veteran exhibited symptoms of palpations, shakiness, anxiety, and ill-temper treated with medication.

On the March 2010 VA examination, the Veteran presented with complaints of fatigue, weakness, heat intolerance, insomnia, and palpations. Neurologic symptoms included anxiety, emotional instability, and tremors. Gastrointestinal symptoms included nausea, and increased number of bowel movements or diarrhea. The examination report notes a July 2008 diagnosis of Graves' disease manifested by weight loss of 20 pounds, difficulty sleeping, shakiness of hands, enlarged thyroid and abnormal thyroid functions of hyperthyroidism treated with radioactive iodine. 

On the October 2013 VA examination report (with December 2013 addendum opinion) it is noted that the Veteran was diagnosed with Graves' disease in 2007 and treated with chemical ablation of his thyroid gland leaving him with a non-functioning thyroid. The examination report notes the Veteran is hypothyroid due to the destruction of his thyroid gland and is on thyroid supplement to bring him to a euthyroid or normal thyroid state. He no longer has symptoms of a hypothyroid gland, specifically tachycardia, tremor, elevated blood pressure, emotional instability, fatigability, thyroid enlargement, eye involvement, muscular weakness, weight loss and sympathetic nervous system, cardiovascular or gastrointestinal symptoms caused by an overactive thyroid. The examiner determined the Veteran's current diagnosis to be hypothyroidism secondary to chemical ablation for Graves' disease, which requires thyroid supplement, and therapeutic range monitoring by lab values which were noted to be in the normal range on October 2013. The examiner further opined that the Veteran's current complaints of fatigue are less likely attributable to his thyroid given his normal thyroid functioning test and more likely associated with his other medical conditions. 

In light of the forgoing, the Board finds that since the award of service connection, the Veteran's Graves' disease was not manifested by hyperthyroidism with emotional instability, tachycardia, fatigability, and increased pulse pressure or blood pressure as required for a higher 60 percent rating. During the March 2010 VA examination the Veteran was noted to have tremors and a June 2008 private treatment record notes symptoms of shakiness of hands (e.g. tremors) (30 percent disability rating), but he does not have the other required symptoms of tachycardia and increased pulse pressure or blood pressure. In addition, during the March 2010 VA examination he was also reported to have symptoms to include fatigue, anxiety, emotional instability (60 percent disability rating), however there was no tachycardia, fatigability, and increased pulse pressure or blood pressure to warrant a 60 percent rating. The Veteran's symptoms improved remarkably with medication. Additionally, the record does not show that there was thyroid enlargement, tachycardia (more than 100 beats per minute), eye involvement, muscular weakness, loss of weight, and sympathetic nervous system, cardiovascular, or gastrointestinal symptoms, to warrant the disability 100 percent disabling.

Celiac Diseases (IBS)

There is no diagnostic code specifically applicable to celiac disease. The Veteran's celiac disease is rated 10 percent under 38 C.F.R. § 4.114, DCs 7399-7319, which applies to irritable colon syndrome. Hyphenated diagnostic codes are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27. The use of the "99" series and a hyphenated diagnostic code reflects that there is no specific diagnostic code applicable to celiac disease, and it must be rated by analogy. 38 C.F.R. § 4.20. 

Diagnostic Code 7319 pertains to a disability similar to the one at issue and provides specific guidance as to how symptoms of this disability are to be evaluated. The Board can identify nothing in the evidence to suggest that another diagnostic code would be more appropriate, and the Veteran has not requested that another diagnostic code should be used. Accordingly, the Board concludes that the Veteran is appropriately rated by analogy under Diagnostic Code 7319. 38 C.F.R. 
§ 4.20. Under Diagnostic Code 7319, a noncompensable rating is warranted for mild irritable bowel syndrome, with disturbances of bowel function with occasional episodes of abdominal distress. A 10 percent disability rating is warranted for moderate irritable bowel syndrome with frequent episodes of bowel disturbance and abdominal distress. A maximum schedular 30 percent disability rating is warranted for severe irritable bowel syndrome with diarrhea or alternating diarrhea and constipation with more or less constant abdominal distress.

Private treatment records from Alaska Regional Hospital dated from October 2008 show the Veteran was admitted to the hospital to have a colonoscopy related to a recent diagnosis of reflux disease associated with symptoms of anemia, diarrhea, and malabsorption. The Veteran was also noted to have Graves' disease and the physician recommended a gluten free diet for life. Following examination and additional testing, Dr. G.S. diagnosed celiac sprue and chronic anemia secondary to gastrointestinal blood loss. In October 2008, Dr. S. determined that result of colonoscopy identified LA grade A reflux esophagitis, hiatus hernia, acute gastritis, and duodenitis.

A private treatment record from Dr. S.L.A. of Adonal Diabetes and Endocrinology Center, includes a biopsy, which identified chronic inflammation suggestive of celiac disease.

On the September 2009 VA examination, the examiner noted the Veteran reported diagnosis of celiac disease in the fall of 2008 treated by a gluten free diet. According to the Veteran's report, abdominal symptoms improved and blood tests for gluten antibodies have also improved since he started a gluten free diet and that no continuous medication was required for control of the Veteran's intestinal condition. On examination, the abdomen was soft and non-tender and bowel sounds were normal. There was no hernia present, enlargement of viscera or masses noted and the rectal exam was normal. The examiner diagnosed celiac disease noting the Veteran's treatment with a gluten free diet with residual abdominal pain if he eats gluten-containing foods.

On examination in March 2010, it was noted that the Veteran had episodic diarrhea several times weekly but less than daily (with a duration of 1 day or less) with more than 12 episodes per year. There was no history of constipation, no abdominal distension consistent with partial bowel obstruction, and no anemia.

On the January 2011 VA examination conducted to determine whether or not the Veteran's service-connected disabilities prevented gainful employment, the Veteran complained of irritable bowel symptoms once a month treated with a gluten free diet, protonix, and irritable bowel medication he does not know the name of, which he takes at the onset of symptoms.

On the October 2013 VA examination (with December 2013 addendum opinion), the Veteran reported that his diarrhea had improved since commitment to a gluten free diet and about 2 to 3 time per month, he will get abdominal cramping with an episode of diarrhea, but it resolves without intervention. The examiner indicated that the Veteran did not have weight loss attributable to the intestinal condition, malnutrition, serious complications, or other general health effects attributable to the intestinal condition. It was also determined that he had occasional episodes of bowel disturbance with abdominal distress, specifically, 7 or more attacks within the past 12 months.

The Veteran is not entitled to a rating higher than 10 percent for celiac disease at any time since the award of service connection, the Veteran has had symptoms such as those listed in the criteria for a 10 percent disability rating and more nearly approximate moderate irritable bowel syndrome with frequent episodes of bowel disturbance and abdominal distress. As discussed above, the Veteran's symptoms more nearly meet the criteria for irritable bowel syndrome and are appropriately rated by analogy under Diagnostic Code 7319. Here, the maximum schedular 30 percent disability rating is warranted for severe irritable bowel syndrome with diarrhea or alternating diarrhea and constipation with more or less constant abdominal distress. 

The Board further finds that a rating in excess of 10 percent is not warranted under any other applicable provision of the rating schedule. 38 C.F.R. § 4.114, Diagnostic Codes 7319. The evidence does not show that the Veteran's celiac disease results in any malnutrition or other debility. Additional ratings are not for further consideration. 38 C.F.R. § 4.114.

The Board has considered the applicability of the benefit of the doubt doctrine. However, as a preponderance of the evidence is against the Veteran's claim for an evaluation in excess of 10 percent for celiac disease, the benefit of the doubt doctrine does not apply. 38 C.F.R. § 4.114, Diagnostic Code 7319.

Extraschedular Consideration

Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating.

Here, the Board finds the Veteran's disability picture is not so unusual or exceptional in nature as to render the rating assigned for this period inadequate. The Veteran's service-connected RA disability is evaluated as a musculoskeletal disability, the criteria of which is found by the Board to specifically contemplate the level of occupational and social impairment caused by this disability. Thun, 22 Vet. App. at 115; see also 38 C.F.R. § 4.71a, Diagnostic Code 5002. During the period on appeal, the Veteran's RA was manifested by pain, stiffness, and decreased grip strength. When comparing this disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's experiences are contemplated by the evaluation assigned for this period. 

As it pertains to the Veteran's Graves' disease, evaluations in excess of that assigned are provided for certain a manifestation of the disorder, but the medical evidence does not demonstrate that those manifestations are present in this case. Here, and as discussed above, the Board finds that the criteria for the evaluation assigned reasonably describes the Veteran's disability level and symptomatology during this period, and therefore, the schedular evaluation is adequate, and no referral is required. See 38 C.F.R. § 4.119, Diagnostic Code 7900.

As it pertains to the Veteran's celiac disease, the Board finds that the Veteran's disability picture is not as unusual or exceptional in nature as to render his disability ratings inadequate, whether considering this disability alone or in connection with his additional service-connected disabilities. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). The schedular criteria contemplate mild, moderate, and severe IBS symptoms with concomitant abdominal pain and bowel disturbances, which is consistent with the Veteran's symptoms of celiac disease. 38 C.F.R. § 4.114, Diagnostic Code 7319.

Finally, the Board notes that under Johnson, 762 F.3d 1362, a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

TDIU

The Veteran reports that he left his job as a plumber because of hand pain and had been unemployed for the past 1 to 2 years. See September 2009 VA Examination.

A TDIU is provided where the combined schedular evaluation for service-connected diseases and disabilities is less than total, or 100 percent. 38 C.F.R. § 4.16(a). VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. Under 38 C.F.R. § 4.16, if there is only one such disability, it must be rated at 60 percent or more to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a).

The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience, but it may not be given to his age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

In this case, the Veteran is service-connected for rheumatoid arthritis, evaluated as 40 percent disabling; tendon inflammation disability, evaluated as 10 percent disabling; intervertebral disc syndrome, evaluated as 10 percent disabling; bilateral knee disability, assigned separate 10 percent disability ratings; tinnitus, evaluated as 10 percent disabling; hearing loss, assigned a noncompensable disability rating; celiac disease, evaluated as 10 percent disabling; Graves' disease, evaluated as 10 percent disabling; radiculopathy of the right and left lower extremity, assigned separate 10 percent disability ratings; posttraumatic stress disorder; evaluated as 10 percent disabling; frontal sinusitis, assigned a noncompensable disability rating; and migraine headaches, assigned a noncompensable disability rating. His combined disability rating is 80 percent. Therefore, he does meet the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). The only remaining question in this case is whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities under 38 C.F.R. § 4.16(a).

Resolving all doubt in the Veteran's favor, the Board finds that entitlement to a TDIU is warranted.

In the October 2010 VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, the Veteran indicated that his RA disability prevented him from securing or following any substantially gainful occupation. He also reported that he is unable to continue work as a plumber or any other work with the use of his hands because they hurt when he writes and also when he is working with the necessary tools and materials to include ladders because of his back and knees. He also indicated that he completed one year of high school and education and training as a flight engineer and a flight engineer instructor. He was also employed as a plumber for 27 years from January 1982 to March 2009 and as a flight engineer and instructor for 28 years. See October 2010 VA Form 21-8940.

An August 2011 letter from Mr. T.E., the Veteran's former supervisor, while employed as a plumber with Klebs Mechanical, describes that the Veteran returned from Iraq in March 2009 and approached Mr. E. about pain he was experiencing in his hands, back, and knees. As a result, Mr. E. explained that the work as a plumber became physically demanding and he was unable to continue plumbing work. Mr. E. further explained that but for the Veteran's injuries, he would have continued employment with the company as a plumber.

On examination in March 2010, it was noted that that the Veteran had to quit his job as a plumber and is unable to work because of severe inflammatory arthritis of the hands, knees, and feet. The examiner opined that the Veteran was unemployable due to his arthritis.

In a March 2012 Physician's Certification for Disability Benefits completed by Dr. D.O. of Odland Family Practice in support of a long term disability claim, indicates that the Veteran had symptoms of pain, stiffness, and limited range of motion for his hands, foot, and elbow. He is also treated for degenerative joint disease and chronic neck and back problems. Dr. O. indicated the impairments prevented the Veteran from standing or sitting upright for six to eight hours, noting that he was able to stand for 10 minutes and sit for 30 minutes. He had the ability to walk at least 1/8 mile, and carry 11-25 pounds during an 8 hour period and 5-10 pounds on a regular daily basis. It was also difficult for him to bend, squat, and kneel due to constant pain from arthritis, which also made it difficult for him to concentrate and stay on task. In so finding, Dr. O. opined that the Veteran's condition prevents his ability to resume work at current or previous employment due to chronic pain, which impacts his ability to concentrate, and due to arthritis, which makes it difficult for him to lift things.

On a separate form titled "Regarding the Functional Capacity of Gordon Howe's Hands," Dr. O. indicated that the Veteran had significant limitation in doing repetitive handling or fingering, due to arthritis, stiffness, and weakening hands and concluded that he is unable to work at a job that required heavy use of his hands (such as working as a plumber, a typist, or as a baker).

While several VA medical reports suggest that the Veteran could work in a sedentary capacity, the Board finds that the aggregate of the Veteran's service-connected disabilities are severe enough to preclude him from working at jobs that he has related experience and education to perform. Accordingly, there is a basis to award TDIU. 

ORDER

An initial disability rating in excess of 40 percent for rheumatoid arthritis is denied.

An initial disability rating in excess of 10 percent for Graves' disease (hyperthyroidism) is denied.

An initial disability rating in excess of 10 percent for celiac disease, to include as secondary to Graves' disease is denied.

A TDIU based on individual unemployability due to service-connected disabilities is allowed, subject to the regulations pertinent to the disbursement of monetary funds. 

______________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs